Charles M. Walker
U.S. Bankruptcy Judge
Dated: 4/7/2017



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

IN RE: )
    Eric S. Peterson, ) Case No: 12-07575-CW3-7
    Peterson Insurance Agency, LLC, ) Substantively Consolidated
    Peterson Enterprises, LLC, )
     )
    Debtors. )
_____)

## MEMORANDUM OPINION

    Susan Limor is the Chapter 7 Trustee in this case and in that capacity, employed her law firm, Susan Limor, Attorney at Law, P.C. ("Firm") to represent her. As principle of the Firm, Ms. Limor has filed the first and final fee application ("Application") for the Firm. This Application was originally filed on November 22, 2016. An objection was filed by Creditor Southern Strategic Partners ("Creditor"), and the matter was continued several times for the parties to further their review of the Application. The Firm has hired legal counsel to represent them in this matter, and an agreed order resolving the informal objection of the United States Trustee ("UST") has been entered. The court has reviewed all of the filings, including the Creditor's objection ("Objection"), the amendments to that Objection, the Firm's response, and the agreed order with the UST, and has considered all evidence and argument presented at the hearing.

### Jurisdiction

    Jurisdiction over this proceeding is authorized by 28 U.S.C. § 1334. Pursuant to 28 U.S.C. § 157(b)(2)(A), this is a core proceeding concerning the administration of the bankruptcy estate. This Memorandum Opinion is deemed to contain the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, made applicable here by Federal Rule of Bankruptcy Procedure 9052.

1

## I.    Background of the Case

Eric Peterson ("Debtor") became an alleged debtor on August 17, 2012 when three separate involuntary petitions were filed–one against him and each of two related entities: Peterson Insurance Agency, LLC (PIA) and Peterson Enterprises, LLC (PE). The Debtor did not oppose the entry of the orders for relief pursuant to 11 U.S.C. § 303(h),[1] and the orders were entered on September 21, 2012 with Susan R. Limor appointed as the Chapter 7 trustee ("Trustee" when referred to in that capacity, "Ms. Limor" individually and when referred to in the role of attorney for the Trustee). The § 341(a) meetings of creditors were set for October 29, 2012 in each of the cases. Twenty days prior to the meetings, the Trustee filed her applications to employ the Firm as attorney for the Trustee in each case. The Orders authorizing the Trustee to employ the Firm were entered on November 2, 2012.

The Debtor appeared at the meeting of creditors[2] in all three cases. Each time, the Debtor invoked his 5th Amendment right against self-incrimination in response to any and all questioning. The Debtor was subsequently indicted by a federal grand jury and charged with 28 counts of bank fraud and two counts of aggravated identity theft. The Debtor entered a plea of guilty to one count of bank fraud and one count of aggravated identity theft. He was sentenced to imprisonment for 37 months, supervised released for three years, and directed to pay restitution of $953,987.99. No schedules or statements were ever filed in any of the three cases.

The Trustee sought and obtained court approval to employ an accounting firm, as well as two additional law firms, to perform services and represent the Trustee in adversarial proceedings. There were no objections to the employment of the accounting firm, and the Court approved the employment of the additional law firms over the objections of some of the creditors. The objections questioned the necessity of employing other law firms and attorneys to handle litigation when the Trustee had specifically employed the Firm for that purpose.[3]

The Firm sought information from nine banks, by way of subpoena, regarding the operations of the Debtor and the related entities. Firm employees reviewed all of the bank statements on behalf of the Trustee, and fees for those services are sought in this Application.

---

[1] 11 U.S.C. § 101 *ff.* Any reference to "section" or "the Code" is a reference to the Bankruptcy Code unless another reference is stated.

[2] 11 U.S.C. § 341(a).

[3] *Trustee's Application to Employ Susan R. Limor, Attorney at Law, a Professional Corporation, as Attorney for the Trustee*, No. 312-07575 (Bankr. M.D. Tenn. Oct. 9, 2012) ECF No. 32.

2

The Firm filed four adversary proceedings on behalf of the Trustee in the Debtor's case.[4] The Firm also filed three adversaries on behalf of the Trustee in the PIA case,[5] and six adversary complaints on behalf of the Trustee in the PE case.[6] The three involuntary cases were eventually consolidated, rendering moot some of the adversary proceedings the Firm had initiated. Fees for services associated with the adversaries are sought in this Application.

The Trustee also employed a mediator for the adversary complaints brought against the petitioning creditors, and sought and obtained approval for payment of one-third the allowed fees of the mediator.

This Application seeks compensation in the total amount of $84,794.20. Approval of this Application in its entirety, coupled with previously awarded administrative fees of approximately $51,161.86,[7] plus the anticipated Trustee compensation under § 326[8], would result in a dividend to creditors of 2.82%.[9]

II.     The Pleadings

        A.  The Firm's Employment Application

Two weeks after her appointment, and 20 days prior to the date set for the meeting of creditors, the Trustee filed her application to employ the Firm. Interestingly, and germane to the issues at hand, the application to employ was filed by the Trustee, with attorney fees requested for its filing in this Application. On that same day, despite no order approving their employment, the Firm filed an Objection to a Motion for Relief from Stay on behalf of the Trustee. Also concerning, in the application to employ the Firm, the Trustee lists the services that she intends to delegate to the Firm as legal counsel:

---

[4] One of the adversaries was seeking recovery from a creditor pursuant to § 542 (*See* Adversary No. 3:13-ap-90349), two sought relief against creditors under §§ 548 and 550 (*See* Adversary Nos. 3:14-ap-90350 and 3:14-ap-90351), and one sought to deny the Debtor's discharge under § 727 (*See* Adversary No. 3:13-ap-90399).

[5] The adversaries sought relief under §§ 548 and 550 (*See* Adversary Nos. 3:14-ap-90339, 3:14-ap-90342 and 3:14-ap-90343.

[6] All six adversaries sought relief under §§ 548 and 550 (*See* Adversary Nos. 3:14-ap-90340, 3:14-ap-90344, 3:14-ap-90345, 3:14-ap-90346, 3:14-ap-90347, 3:14-ap-90348).

[7] This amount includes mediator fees, special counsel fees, accountant fees, court filing fees, estimated bank fees, and the required bond premium.

[8] Trustee compensation is a percentage of the estate receipts as set forth in § 326.

[9] Based on the following: Total receipts of $205,749.70, approximate total administrative claims of $149,493.55, total of unsecured debt of $2,051,118.99, and total available for distribution to creditors of $56,256.15. (*See Creditors' Amended Objection to First and Final Application for Compensation and Reimbursement of Expenses for Susan R. Limor, Attorney at Law, a Professional Corporation, Attorneys for Trustee*, No. 12-07575-MH3-7 (Bankr. M.D. Tenn. Jan. 24, 2017) ECF No. 261, at p.7.

3

3. The Trustee anticipates that the services said Law Firm may render include, but are not limited to:

      a.      The examination of officers of the Debtor(s); and other parties as to the acts, conduct, and property of the Debtor(s);

      b.      The preparation of records and reports as required by the Bankruptcy Rules, and the Local Rules of Bankruptcy Procedure;

      c.      The preparation of applications and proposed orders to be submitted to the Court;

      d.      The identification and prosecution of claims and causes of action assertable by the Trustee on behalf of the estate herein;

      e.      The examination of proofs of claim previously filed and to be filed herein, and the possible prosecution of objections;

      f.      Advising the Trustee and preparing documents in connection with the contemplated limited ongoing operation of the Debtor(s)'s business;

      g.      Advising the Trustee and preparing documents in connection with the liquidation of assets of the estate, including analysis and collection of outstanding receivables;

      h.      Accomplishing title searches and closing real estate transactions necessary in the administration of the estate;

      i.      Assisting and advising the Trustee regarding the performance of her other official functions.

ECF No. 32, at p.2-3.

This list represents the first red flag regarding professional services and fees in this case in that the majority of the identified services delegated to the Firm are services identified in § 704 as Trustee services. Therein lies the root of the issue at hand. The contents of the list indicate a misappropriation of duties on the part of the Trustee, but this does not become an issue for the Court until compensation is sought for the services outside of that authorized for the Trustee under § 326.

    B.  The Objection

The Objection seeks reduction of the award of fees under the Application because the compensation sought cannot be considered reasonable given the Trustee's results. In other words, the total receipts do not amount to enough of a recovery to justify the fees requested in the Application.

Additionally, the Objection sets out several bases for disallowance of the fees requested, including insufficient time entries for vagueness or the lumping of services, services that were duplicative or constitute a Trustee duty, fees that are unreasonable or conferred little or no benefit to the estate, and includes accusations of negligence in the administration of the case to

4

the point of harming the estate's interests.  The Court has reviewed the Objection and has taken into consideration the bases identified therein.

### C.  The Fee Application

On November 22, 2016, nearly four years to the day after entry of the order employing the Firm, the Application was filed seeking payment for services rendered to the Trustee over a four-year time period, including services performed outside the term of employment.  This is the only fee application on behalf of the Firm in that no interim award was sought or conferred.  Through its comprehensive review of the Application and its attachments, the Court finds that a large number of the entries are insufficient to assist the Court in making the required determinations regarding reasonableness and necessity, as well as the heightened determinations when a Trustee acts as an attorney for the estate.

### D.  Objection of the United States Trustee

At the first hearing on the Application, counsel for the UST informed the Court of an informal objection that had been resolved by agreement with the Firm.  The Court required the UST to file something on the record advising the Court of the basis for that objection and the terms of any settlement.  The UST submitted an agreed order reducing the requested fees by a total of $5,714.50, and that order was entered on February 13, 2017.  No specific objections were articulated to the Court at the hearing, nor were any present in the agreed order.  The agreed order did contain a reservation regarding "the issue of the tardily filed claim in the Seventh Avenue Properties case." ECF No. 265, p.1. *See also* Exhibit G.

### E.  The Hearing

The Court conducted an evidentiary hearing on the Objection and the Application on February 21, 2017.  At the hearing, the Court considered evidence and heard testimony from Erica Johnson, an attorney for the Firm, as well as from Ms. Limor, the named principle of the Firm and the Chapter 7 Trustee on the three consolidated cases.  Ms. Limor stated she was testifying as the Trustee's attorney.

#### a.  Erica Johnson

Erica Johnson testified that in her opinion and based on her experience, the rates charged by her firm were reasonable, that she has drafted over 50 fee applications similar to this one, and that they were approved in this district. She then went on to state that this case was so complicated that it actually interfered with billable time in other cases.

5

The most helpful testimony from Ms. Johnson was her description of the process involved in the bank subpoenas and the resulting bank statements. Apparently, the Firm issued the subpoenas and reviewed all bank statements exclusively. She stated that the Firm had been hired by other trustees to perform this service and that the Firm performed the entire review of all bank statements from all banks for the Trustee. She stated that the statements were received and reviewed in three steps. This was necessary because the first round of subpoenas led to information resulting in the second round of subpoenas. Thereafter, the information received on the return of the second round of subpoenas led to a third and final round of subpoenas. She also stated that the statements were reviewed solely for the purpose of determining if the Trustee had any basis for recovery under §§ 547 and 548.

Ms. Johnson also testified as to an adversary proceeding filed by the Firm on behalf of the Trustee against Hartford Insurance. The adversary sought turnover of commissions payable to the Debtor from Hartford. She testified that Hartford indicated they would not be willing to turnover anything without a court order, and that is why the Firm filed the adversary. She then stated that as it turned out most of the policies subject to the commissions had been cancelled and the recovery from Hartford was far less than initially anticipated. In fact, the sum recouped from Hartford was not nearly enough to cover the cost of the Firm's representation in that case.

### b. Susan Limor, Attorney

As credible and helpful asMs. Johnson's testimony was, Ms. Limor's testimony was the polar opposite. In fact, not only were her statements incredibly concerning, they were downright alarming. Ms. Limor could not remember the details of services for which she was requesting fees. Of course, this a direct result of Ms. Limor having waited four years to file the Application. It was apparent that she had not taken any steps to review any records in anticipation of her testimony at the hearing.

As disturbing as that was, it did not even approach the level of alarm reached when asked to explain how certain services were not Trustee services being billed as attorney services, for which she answered succinctly "Well, if it is in that fee application, then it is for attorney work." Helpful? Not in the least. Her description that it was her understanding that "an attorney talking to an attorney equals attorney time" was equally distressing.

Also alarming was the number of times she answered questions about her fees, services, and actions in the case with "I don't know" or "I don't remember," and the old fallback:

"Because that's the way we've always done it in this district." Ms. Limor seemed to be oblivious to the purpose of the hearing and the importance of her testimony. Given the amount of time the parties were allowed to address issues with the Application, and the instructions at the first hearing wherein the Court articulated its concerns with the Application, it is disturbing that Ms. Limor would be so woefully unprepared.

F. Legal Standards

a. The Court

Section 330 charges the Court with an independent duty to review all fee applications presented in all bankruptcy cases, no matter the chapter of relief. This review is to ensure that the requested fees are reasonable, necessary, and justified. *In re Wildman*, 72 B.R. 700, 705 (Bankr. N.D. Ill. 1987). The Court's review is essential to ensure that estates are administered economically. *In re Areaco Inv. Co., Inc.*, 152 B.R. 597 (Bankr. E.D. Mo. 1993). The Court's duty is unaffected by the existence of an objection to a fee application. The Court must evaluate any fee request to determine if it is reasonable. *In re Crutcher Transfer Line, Inc.*, 20 B.R. 705 (Bankr. W.D. Ky. 1982). Although there have been two objections to this Application, and the Court has considered the bases for both objections, the Court has conducted its own evaluation, and made its own determinations with regard to the Application.

b. The Trustee

The UST appoints a Chapter 7 Trustee upon application and demonstration that the Trustee meets the qualifications as set forth in 28 C.F.R. § 58.3(b).[10] Having met these high

_____

[10] (b) The qualifications for membership on the panel are as follows:
    (1) Possess integrity and good moral character.
    (2) Be physically and mentally able to satisfactorily perform a trustee's duties.
    (3) Be courteous and accessible to all parties with reasonable inquiries or comments about a case for which such individual is serving as private trustee.
    (4) Be free of prejudices against any individual, entity, or group of individuals or entities which would interfere with unbiased performance of a trustee's duties.
    (5) Not be related by affinity or consanguinity within the degree of first cousin to any employee of the Executive Office for United States Trustees of the Department of Justice, or to any employee of the office of the U.S. Trustee for the district in which he or she is applying.
    (6)(i) Be a member in good standing of the bar of the highest court of a state or of the District of Columbia; or
        (ii) Be a certified public accountant; . . .
    (7) Be willing to provide reports as required by the U.S. Trustee.

standards, the Trustee is presumed to possess the ability to perform the duties required of the position. *In re Stevens*, 407 B.R. 303 (Bankr. N.D. Ill. 2009). *See also In re Perkins*, 244 B.R. 835, 843 (Bankr. D. Mont. 2000), citing *United States v. Freeland (In re Spungen)*, 168 B.R. 373, 377 (N.D. Ind. 1993) ("if the Trustee can't perform the duties of a Trustee with a modicum of proficiency, he is not authorized to be a Trustee.").

Moreover, a trustee is appointed not devoid of any ability to function within the bankruptcy system. To the contrary, the appointment is based on an ability to perform statutory and required functions within a legal system involving the interests of various stakeholders in a bankruptcy estate. *See In re Lowery*, 215 B.R. 140, 141-42 (Bankr. N.D. Ohio 1997).

### c.  Trustee Duties

The statutory duties of a trustee are found in § 704:

1. Collecting and reducing to money the property of the estate,

2. Accounting for all property received,

3. Ensuring that the debtor performs his intention pursuant to section 521(2)(B),

4. Investigating the financial affairs of the debtor,

5. Examining proofs of claims, and objecting to any improper claims,

6. Opposing the discharge of the debtor when appropriate

7. Furnishing information concerning the estate and its administration as requested by any party in interest,

8. Filing periodic reports and summaries with proper government agencies if operating the debtor's business,

9. Filing a final report and account with the court and the United States Trustee,

10. Providing notice of any domestic support obligation claim,

11. Performing the debtor's obligations as administrator of any employee benefit plan,

---

(8) Have submitted an application under oath, in the form prescribed by the Director, to the U.S. Trustee for the District in which appointment is sought: *Provided*, That this provision may be waived by the U.S. Trustee on approval of the Director.

28 C.F.R. § 58.3.

12.    Using reasonable and best efforts in the transfer of health care patients to an appropriate health care business when the debtor's health care business is in the process of being closed.

11 U.S.C. § 704.

Associative duties spring from these statutory duties, none of which may be entrusted to other estate professionals. These additional duties include the following:

- Services relating to the sale of the debtor's assets
- Examination of the debtor's papers
- Routine telephone calls and correspondence with information seekers
- Preparing applications for employment of professionals
- Acting as liaison with special counsel

*In re Stevens*, 407 B.R. at 307, citing *In re McKenna,* 93 B.R. 238, 241 (Bankr. E.D. Cal. 1988).

It has long been a widespread principle that a Trustee may not relinquish their fiduciary and representative duties by delegating their responsibilities to professionals. Trustee duties are just that, the duties entrusted only to the Trustee. They are not to be ignored, nor are they to be delegated, absent well established special circumstances. Therefore, those duties charged to the Trustee cannot be compensable to anyone else, even properly employed professionals of the estate. *See U.S. Department of Justice, Executive Office for the United States Trustee, Handbook for Chapter 7 Trustees, July 1, 2002, p.8. See also In re Lexington Hearth Lamp and Leisure, LLC*, 402 B.R. 135, 143 (Bankr. M.D.N.C. 2009), *In re King*, 88 B.R. 768, 770 (Bankr. E.D. Va. 1988), citing *In re Meade Land & Dev. Co., Inc.*, 527 F.2d 280, 285 (3d Cir.1975) (decided under the Act); *In the Matter of Mabson Lumber Co., Inc.*, 394 F.2d 23, 24 (2d Cir.1968) (same); *In re Wiedau's, Inc*., 78 B.R. 904, 907 (Bankr. S.D. Ill. 1987); *In re Wildman*, 72 B.R. 700, 706 (Bankr. N.D. Ill. 1987); *In re Taylor*, 66 B.R. 390, 392 (Bankr. W.D. Pa. 1986); *Matter of Wilmon, Inc.*, 61 B.R. 989, 990 (Bankr. W.D. Pa. 1986); *In re Shades of Beauty, Inc.*, 56 B.R. 946, 949 (Bankr. E.D.N.Y. 1986), *aff'd in part and remanded on other grounds,* 95 B.R. 17 (E.D.N.Y. 1988); *In re Impact Publications, Inc.,* 24 B.R. 980, 982 (Bankr. N.D. Tex. 1982); *In re Crutcher Transfer Line, Inc*., 20 B.R. 705, 711 (Bankr. W.D. Ky. 1982); *In re Auto-Train Corp*., 15 B.R. 160, 162 (Bankr. D.D.C. 1981); *In re McAuley Textile Corp*., 11 B.R. 646, 648 (Bankr. D. Me. 1981); *In re Community. Home Fin. Servs., Inc*., No. 1201703EE, 2015 WL 6511183, at *11 (Bankr. S.D. Miss. Oct. 27, 2015) ("[I]t is well-settled that courts may not

compensate an attorney appointed to represent the trustee for services statutorily required of the trustee. *In re J.W. Knapp Co.,* 930 F.2d 386, 388 (4th Cir. 1991)." *In re Finney,* No. 91–20239–SCS, 1997 WL 33475580, at *25 (Bankr.E.D.Va. Feb. 26, 1997)."

### d. Compensation

The services listed in § 704, as well as those outlined in the related case law, entitle the Trustee to compensation under § 330(a) and § 326. Services that fall under the categories set forth in § 704 are deemed to be compensable under § 326 as Trustee compensation, and are not compensable under § 330 as professional services. *In re Community. Home Fin. Servs., Inc.*, 2015 WL 6511183, at *14.

Section 330 establishes the Court's independent review standard, while § 326 sets forth the limitations on compensation for the services performed by the Trustee. Section 326 identifies the amount of compensation a Trustee can receive for performing the statutory duties in § 704, as well as services associated with those duties. *Id.*, citing *In re Hambrick*, No. 08-66265, 2012 WL 10739279, at *5 (Bankr. N.D. Ga. Apr. 10, 2012); *In re Holub*, 129 B.R. 293, 295 (Bankr. M.D. Fla. 1991); *In re Garcia*, 317 B.R. 810, 816 n.4 (Bankr. S.D. Cal. 2004); *In re Polk*, 215 B.R. 250, 253 (Bankr. M.D. Fla. 1997); *In re King*, 88 B.R. 768 (Bankr. E.D. Va. 1988), 7 *Collier on Bankruptcy* ¶ 1106.03 [10] (Alan N. Resnick & Henry J. Somme reds., 16th ed.); *In re Jebco, Inc.*, 44 B.R. 81, 83 (Bankr. W.D. Ky. 1984); *In re Pickering*, 66 B.R. 11, 12 (Bankr. N.D. Ohio 1986).

Section 330(a)(1)(A) identifies the Court's responsibilities in awarding fees: determining that the compensation requested is reasonable, and that it is for actual and necessary services. *In re King*, 546 B.R. 682, 693 (Bankr. S.D. Tex. 2016).

The principal issue in this matter is governed by § 328. Section 328 limits the compensation of professionals employed by the estate, and specifically in subsection (b) addresses the strict limitation when a trustee is authorized under § 327(d) to serve as attorney for the estate. This restriction applies when a trustee is filing dual fee applications in a case: one as the trustee, and one as the attorney for the trustee. Section 328(b) exists because trustee services are compensable under a separate and different standard from legal services. Trustee services are contemplated by the fee scheme as set forth in § 326. Therefore, an attorney-trustee cannot be separately, and therefore doubly, compensated for those services under § 328. *In re Bofill*, 25 B.R. 550 (Bankr. S.D.N.Y. 1982); *In re SMS, Inc.*, 15 B.R. 496 (Bankr. D. Kan. 1981); *Matter of*

*Wilmon, Inc.*, 61 B.R. 989 (Bankr. W.D. Pa. 1986); *In re Haggerty*, 215 B.R. 84 (Bankr. M.D. Fla. 1997); *In re Lowery*, 215 B.R. 140 (Bankr. N.D. Ohio 1997).

This precise restriction elevates the Court's responsibilities in its independent review and, therefore, requires the attorney-trustee to advise and assist the Court in order to assure that there is no issue of conflict or impropriety in the administration of an estate, and that the estate has been efficiently and justiciably administered. The responsibility lies with the attorney-trustee to address the Court's concerns and submit a fee application that clearly and succinctly sets forth the precise service performed in order for the Court to discern under what category the service falls: trustee service or legal service. *Matter of Vlachos*, 61 B.R. 473 (Bankr. S.D. Ohio 1986); *In re King*, 546 B.R. at 697, citing *In re Howard Love Pipeline Supply Co.*, 253 B.R. 781, 791-92 (Bankr. E.D. Tex. 2000).

G.   Discussion

One of the resources the Court uses to assist in maintaining the integrity of the bankruptcy system is the trustee assigned to a case.  The trustee of a case is truly on the frontlines of the bankruptcy system.  Most debtors will never see anyone associated with the system and their case outside of the trustee, because most debtors will only be required to attend the § 341 meeting of creditors.  The vast majority of debtors are represented by counsel and, therefore, are rarely if ever required to appear in court.  The § 341 meeting and the trustee are their only direct interaction with the bankruptcy system.

In this case, the Court's statutory obligations are particularly important because the Chapter 7 Trustee has employed herself and her own law firm as attorneys for the Trustee, both to be paid from the receipts of the estate.  The task of completing the Court's independent review of this Application is particularly unpleasant because the Trustee has failed to assist the Court, or in any way address the concerns identified by the Court at the initial hearing.  This presents a situation that is rife with conflict, not just because a creditor has filed an objection, but because the lines between Trustee and attorney have been blurred and in some instances, blatantly breached.

> It may be impossible to articulate a definitive line between the legally compensable duties of a trustee and those of a professional appointed to assist the trustee. Nevertheless, it is imperative that the court attempt to identify this line in each case in order to prevent depletion of estates and derogation of the principles underlying the Code. Such an attempt is especially important in a case like this

where the only distributions are to the trustee and her hired professionals. *See In re King,* 88 B.R. 768, 770 (Bankr.E.D.Va.1988).

*In re Stevens*, 407 B.R. at 306.

Here, Ms. Limor testified that she has been a Chapter 7 Trustee in the Middle District of Tennessee for the past 28 years. In that position, for that period of time, she handled thousands of cases in her role as Trustee and, she stated, hundreds wherein she employed the Firm to represent her as Trustee. Ms. Limor's background and experience speak to her abilities and knowledge of bankruptcy law and practice. Such endurance in the position of Trustee would undoubtedly indicate a firm grasp of the duties and responsibilities entrusted to the trustee.

To the contrary, Ms. Limor demonstrated time and time again a total misunderstanding, and if not that, a blatant disregard, of the issues specifically articulated by this Court at the initial hearing. These were issues that should have been on her radar, both as Trustee and as attorney for the Trustee, from time she employed the Firm. After all, the Trustee compensation, coupled with other professional fees and the total amount requested in the Application, amount to over 50% of total estate receipts. Moreover, as previously noted, after payment of administrative costs and fees, distribution to creditors amounts to a paltry 2.82%.

At the evidentiary hearing, Ms. Limor's demeanor, as well as her inability to answer the questions in a manner that would justify the request for fees, was not just worrisome, but frustrating for the Court. She clearly had no intention of assisting the Court in its determinations, and was simply unwilling and unprepared to do so. An attorney with Ms. Limor's background and experience could have, and should have, known the weight and importance of her testimony, and been ready, willing, and able to clarify and justify the fees and expenses requested in this Application.

Allowance of Compensation and Expenses

The Court bore a considerable responsibility in its examination of the fees and expenses requested in this Application. First, the Application involved fees requested in three consolidated involuntary cases. Second, the Chapter 7 Trustee employed herself and her firm as the Trustee's attorney. Finally, the information provided in the Application, and by Ms. Limor through her testimony, was woefully insufficient to justify several of the requests and failed to assist the Court in its assessment as to the reasonableness and necessity of the services

performed. Therefore, the fee and expense items listed on the attachments will be awarded as set forth below.

a. Scope of Employment

The fees listed on Exhibit A are for services performed outside the scope of employment. The Order Authorizing the Trustee to Employ Susan R. Limor, Attorney at Law, A Professional Corporation, as attorney to represent the Trustee as counsel in this case was entered on November 2, 2012. No request for employment *nunc pro tunc* was made in the application, nor was any such relief mentioned in the order. "A professional's employment in a bankruptcy case is limited to the employment approved in the order authorizing the employment." *In re Computer Learning Centers, Inc.*, 285 B.R. 191 (Bankr. E.D. Va. 2002). This assures proper management of the case and the professionals. *Id.,* citing *In re New England Fish Co*., 33 B.R. 413, 420 n.1 (Bankr. W.D. Wash. 1983). The scope of employment may not be expanded by simple agreement between the professional and the trustee. It must be approved by the court. *Id.,* at 205.

The Court authorized the employment of the Firm as of November 2, 2012. Review of the Application and consideration of the testimony offered provides no basis for granting *nunc pro tunc* employment to justify compensation for services provided prior to that employment date. The standard for *nunc pro tunc* relief is stringent. Any request is subject to the discretion of the bankruptcy court. *In re Twinton Properties Partnership*, 27 B.R. 817, 819 (Bankr. M.D. Tenn. 1983). Here, there was no request to employ the Firm *nunc pro tunc* to October and, even if this Court were willing to approve such appointment at this juncture, there exists no basis in the record to grant relief of such an exceptional nature. *Id.* "The professional who commences efforts on behalf of a trustee or debtor-in-possession without first getting court approval of employment does so at the substantial risk of forfeiting compensation." *Id.* Consequently, all requests for fees ($1,110.00) and expenses ($77.95) incurred prior to November 2, 2012 are Denied.

b. Services Improperly Charged to Estate

Exhibit B itemizes fees associated with the preparation of orders of continuance and court appearances for a creditor's motion for relief from stay regarding the Debtor's residence. These fees are not properly charged to the estate for two reasons.

First, the motion for relief was brought by a creditor who was represented by counsel. Ms. Limor appeared in court and announced the agreed continuances of the motion and prepared orders to that effect, and then charged the estate for legal services for these courtesy services. Prosecution of the motion is the responsibility of the movant. If there is an agreed continuance keeping the motion alive, it is the movant's responsibility. The estate should not foot the bill to keep that request for relief pending, even if the Trustee has agreed as a courtesy. A courtesy by the Trustee regarding trustee services is not compensable as legal fees, even if there is a pending objection by the Trustee.

Second, the motion for relief was brought by the mortgage holder on the Debtor's residence. There were two bases for relief listed in the motion: (1) the property was held as tenants by the entirety and; therefore, under Tennessee law, out of the reach of the Trustee for the purposes of administration; and (2) no equity.

These two bases should be familiar to the Trustee. Ms. Limor testified that she has been a Chapter 7 Trustee in the Middle District of Tennessee for over 28 years. Surely, she is aware that Tennessee is a state that has opted out of the federal exemption scheme as set forth in § 522(d). *See* TENN. CODE. ANN. § 26-2-112. As a Trustee, Ms. Limor is charged with certain duties and the ability to perform certain services on behalf of the estate. *See* § 704. The Trustee is not a blank slate upon appointment to a case and in need of assistance to perform even the most perfunctory of tasks charged to her. The assessment of the estate's interest in real property may at times involve a complex legal scheme or require the assistance of counsel for litigation purposes. There may be cases when the assistance of forensic accountants for complex computations—regarding equity in such assets as intellectual property, stocks, partnerships, and even real property of a commercial nature—is required for the benefit of the estate. No such complex issues were involved with this motion. This was a simple, straightforward determination regarding the basics of property in a bankruptcy estate: equity in the Debtor's residence.

The Trustee's objection (ECF No. 33)—brought through counsel as a legal service— stated that the Trustee did not have enough information to respond to the motion because the meeting of creditors had not been held, and that the Trustee did not yet have the opportunity to question the Debtor. These are Trustee assertions directly related to the basic duties of a Chapter 7 trustee, not legal issues, and do not require legal representation to assert. This motion

highlights one of the most prevalent misunderstandings that is rampant among panel trustees in this district. The filing of a document with the court does not transform the task into one that must be accomplished with the assistance of counsel. This was a Trustee asserting the inability to perform her duties at that time. No legal argument was made.

For the foregoing reasons, services associated with this motion are not compensable as legal services,[11] and the related requests for compensation are Denied in the amount of $285.00.[12]

### c. Trustee Services Billed as Attorney Services

Exhibit C represents the bulk of the deductions made as a result of the Court's review. The Trustee hired her own firm to represent the Trustee and the estate, and apparently forgot that there would be compensation awarded under § 326 for the services of the Chapter 7 trustee. The services listed on Exhibit C are trustee services billed as legal fees and appear to encompass all of the work that was performed by the Trustee as the Trustee, as well as the Firm. The Trustee services for which the Firm seeks compensation are as follows:

1)      phone calls to counsel for lienholders;

2)      employment of professionals;

3)      correspondence regarding commissions as assets of the estate;

4)      attending a hearing in third-party bankruptcy on behalf of the estate;

5)      review of mail and documents from financial institutions;

6)      motion to extend discharge objection deadline;

7)      administrative objection to closure of case;

8)      agreement regarding stay relief of lienholder;

9)      initial review of bank statements;

10)      initial meetings/conferences regarding possible Ponzi scheme; communications and objection to application for administrative expenses;

11)      preparation of fee application for special counsel and accountant.

---

[11] Although these fees, could also be listed on Exhibit C–Trustee Services Billed as Attorney Services, the Court wanted to accentuate the deduction of these fees for the reasons stated.
[12] Total deduction is $285 and does not include $150 that was part of the agreed order with the UST.

As previously mentioned, the Application itself, as well as the testimony of Ms. Limor, offered the Court little assistance in determining the necessity and reasonableness of the fees requested. All of those fees associated with items 1 through 8, and items 10 and 11, are clearly duties of the Trustee. "Preparation of the application for employment of a professional is another manifestation of the trustee's . . . enumerated duties, all of which imply a duty to administer the estate . . . . Such applications are generally prepared and presented by a trustee without the assistance of an attorney for the estate." *McKenna*, 93 B.R. at 241.

To obtain attorney compensation for the services listed above, the applicant must articulate with specificity the particular complexity, novelty, or unique circumstances surrounding the matter such as to require the assistance of counsel to complete. Absent any explanation within the application, or through testimony at a hearing, as to why these duties were so complex as to require the assistance of counsel, the requests for fees and expenses associated with those services are hereby Denied.

As for item 9 regarding the initial review of bank statements, the Court derived a better understanding of the services associated with the review of the bank statements. Not a clear understanding, but a better one than can be derived from the Application. That understanding came from the testimony of Ms. Johnson. When describing the process of issuing subpoenas to the financial institutions and reviewing the resulting statements, Ms. Johnson described a process similar to the peeling of an onion. When the initial disclosures came in from the subpoenas, they revealed another layer of information resulting in another round of subpoenas. When the next wave of information was received pursuant to the second round of subpoenas, a third layer of information was revealed, requiring another round of subpoenas.

Ms. Johnson stated that the review was restricted to an inquiry focused on possible preference and/or fraudulent transfer actions and, therefore, was strictly legal work. A limited review as described by Ms. Johnson is concerning for several reasons. If in fact the review of bank statements was limited to determining actions for recovery, and the Trustee did not review the bank statements at all, that could mean that quite a few issues of concern to the Chapter 7 trustee may have been left undiscovered, *i.e.* assets not subject to turnover or recovery, identification of creditors, etc. Under these circumstances, the estate would be subject to insufficient administration.

This description, coupled with the completely insufficient description of the services charged in the subpoena and resulting document review, has led the Court to configure what it believes is an appropriate measure by which to evaluate the services. It appears that the initial review of the bank statements should have been Trustee work for the purposes of determining the Debtor's financial situation. Let's not forget, there were no schedules filed in these involuntary cases, and the Debtor asserted his 5th Amendment rights at the meeting of creditors. The Trustee had to somehow determine if there were assets, get a picture of the Debtor's financial dealings and, more importantly, determine if the Debtor was entitled to a discharge. The fact that the Trustee sought to, and achieved, denial of the Debtor's discharge indicates that such a review was accomplished. Although the Application did not inform the Court as to how such a review was achieved, the Court will presume that the Trustee properly investigated through the documents propounded by the financial institutions, and from that information, formed the basis for her action against the Debtor.

Therefore, from their timing in the case, those time entries that appear to be associated with the initial review of the financial documents obtained through the issuance of subpoenas are deemed to be Trustee duties and will not be compensable under this fee request.

For the reasons stated above, Exhibit C details the requests for fees ($8,622.00) and expenses ($306.53) deemed to be charged for performance of Trustee duties and those requests are Denied.

d. Improper Allocation of Professional Resources

A Chapter 7 trustee is responsible for liquidating the assets of the estate in an efficient manner while maximizing the benefit to creditors. The trustee exercises business judgment in administering an estate in order to accomplish this goal. Everything the trustee does on behalf of the estate is governed by the business judgment rule. "The business judgment test is a flexible one, designed to allow the trustee, and ultimately the court, to exercise their discretion fairly in the interest of all who have had the misfortune of dealing with the debtor." *Bregman v. Meehan (In re Meehan)*, 59 B.R. 380, 385 (E.D.N.Y. 1986), citing *Control Data Corp. v. Zelman (In re Minges)*, 602 F.2d 38, 43 (2d Cir. 1979). The trustee's duties include overseeing the professionals the trustee has employed to represent the estate. That oversight includes the billing process, which includes "billing judgment."

When employed by an estate, a professional is charged with "billing judgment" as well. Billing judgment is just as important in an application for statutory attorney fees as it is in private practice. Efforts should be made to exclude any request for "excessive, redundant or otherwise unnecessary" fees. *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S. Ct. 1933, 1939-40, 76 L. Ed. 2d 40 (1983), citing *Copeland v. Marshall*, 641 F. 2d 880, 891 (1980) (*en banc*). The requirement that fees be for actual and necessary services, and that those fees be reasonable, necessitate the exercise of stringent "billing judgment" in bankruptcy matters. *In re Pettibone Corp.*, 74 B.R. 293, 303 (Bankr. N.D. Ill. 1987).

The fee request here is from one of the firms representing the Trustee. Not just any firm, the Trustee's firm. The need for stringent billing judgment cannot be understated in this situation.

The appropriate exercise of billing judgment necessarily includes the proper delegation of tasks so as to avoid charging the estate an inflated rate for a task that could and should be performed by a less costly employee. *In re Pettibone Corp.*, 74 B.R. 293, 303 (Bankr. N.D. Ill. 1987). *See In re Continental Illinois Securities Litigation*, 572 F.Supp. 931, 933 (N.D. Ill 1983), and *In re Jensen-Farley Pictures, Inc.,* 47 B.R. 557, 583 (Bankr. D. Utah 1985).

In the Sixth Circuit, the bankruptcy courts use the lodestar method when determining if the attorney fees are reasonable. *Boddy v. United States Bankruptcy Court* (*In re Boddy*), 950 F.2d 334, 337 (6th Cir. 1991). The two-part lodestar analysis consists of: (1) is the hourly rate charged reasonable; and, (2) are the lawyer's hours reasonable? *Id.* The analysis regarding the charged rate is to determine if the task commanded such a rate. "[W]hether the rate charged for the service is reasonable in light of the complexity and importance of the task." *Boyd v. Engman*, 404 B.R. 467, 477 (W.D. Mich. 2009).

The services itemized on Exhibit D are clerical services performed every day by non-legal staff of law firms. No legal analysis is required. The tasks are simple and require no advanced education or abilities. No explanation has been offered as to why these ministerial tasks required the expertise of an attorney. These are tasks charged at attorney rates that could, and should have, been accomplished by clerical staff at a lower rate.

Nevertheless, this case clearly presented unique and somewhat complex matters, as determined by the filings and proceedings in the cases, not from the Application or Ms. Limor's testimony. However, Ms. Johnson provided some details in her testimony (*i.e.* challenges in

identifying parties) that the Court will consider when reviewing these fees, and will allow the fees at the paraprofessional rate as stated in the Application. The Court makes this stretch in an attempt to offer guidance in the handling of these matters. This is not to say that fashioning a proper rate is part of the Court's duties. On the contrary, the burden still, and always will, lie with the applicant to justify the fees requested. *In re McLean Wine Co., Inc.*, 463 B.R. 838, 849 (Bankr. E.D. Mich. 2011), citing *In re Woodward East Project, Inc*., 195 B.R. 372, 375 (Bankr. E.D. Mich. 1996).

Therefore, Exhibit D sets forth the services that will be awarded at the paraprofessional rate resulting in a deduction of $1,075.50.

e. Hartford/Prudential Litigation

The Firm filed an adversary proceeding against Hartford Life and Annuity Insurance Company ("Hartford"), The Prudential Insurance Company of America ("Prudential"), and the Debtor[13] seeking turnover of earned, but unpaid prepetition commissions. The Debtor apparently earned these commissions on the sale and maintenance of insurance policies through Hartford and Prudential.

Ms. Johnson testified that the basis for the adversary proceeding was that Hartford and Prudential indicated they would not turnover any commissions to the Trustee absent a court order. After filing the adversary through counsel, it was discovered that very few of the policies that were the subject of the litigation were still in effect and generating commissions. The total recovery of commissions pursuant to the adversary was $1,987.

Although the Objection indicates that the cost to the estate for litigating the matter was $4,620 for 16.7 hours of attorney time, that estimation appears to include every single communication with Hartford and Prudential–even those preceding the filing of the adversary. Most of the charges for pursuing these commissions prior to the filing of the adversary are for Trustee duties, and thus have been treated in subsection "c" above. The actual charges for attorney time in the adversary amounts to $2,142.56. That is a mere $155.56 over the recovery amount.

The Creditor makes much of this charge to the estate. Although it does not appear to have been the best judgment to bring the adversary when a court order to satisfy Hartford and Prudential could have been obtained at less cost to the estate, the result is not particularly

---

[13] Adversary No. 13-ap-90349.

egregious.  Again, let's not forget that these were involuntary bankruptcies, brought against a Debtor who eventually ended up incarcerated for his business dealings.  It is understandable that, in that situation, companies such as Hartford and Prudential may need some strong "convincing" to relinquish funds associated with the Debtor's business.

> When evaluating the benefit to the estate, "courts objectively consider whether the services rendered were reasonably likely to benefit the estate from the perspective of the time when such services were rendered." *In re Value City Holdings, Inc.,* 436 B.R. 300, 305 (Bankr.S.D.N.Y.2010) (citation omitted). "The pertinent question is not whether the services performed by the professional conferred an actual benefit upon the estate; but whether, when viewed under the circumstances in existence at the time, the services were reasonably calculated to benefit the estate." *In re Kennedy Mfg.,* 331 B.R. 744, 748 (Bankr.N.D.Ohio 2005) (citation omitted). In making this determination, however, "[a] court should resist the temptation to engage in '20/20 hindsight,' and focus instead on facts known (or which should have been known) to the applicant at critical points during the pendency of the case." *In re Arnold,* 162 B.R. 775, 778 (Bankr.E.D.Mich.1993) (citation omitted).

*McLean*, 463 B.R.at 848.

The Court will resist the temptation to micro-manage this issue and award the fees associated with the subject adversary as requested for the services listed on Exhibit D in the amount of $2,142.56.

> f.   Insufficient Description

The Court has made much of the insufficiency of the Application throughout this opinion, and here is where the most flagrant of those inadequacies will be addressed.  "Professionals who lump time together or have woefully inadequate descriptions, such as 'research', 'work in motion', 'telephone calls to counsel for creditor', do so at their peril.  No Court should be expected to intuit the benefit of such work to the estate." *In re ACT Manufacturing, Inc.*, 281 B.R. 468, 483 (Bankr. D. Mass. 2002).

The time entries listed on Exhibit F provide little to no information that would assist the Court in determining the necessity and reasonableness of the services.  Moreover, they are so utterly lacking that it is impossible to determine if these services are in the nature of Trustee services, legal fees, clerical duties, or within the scope of professional employment.  For example, on June 2, 2014, Ms. Limor apparently performed the service documented as "Finish reviewing boxes."  This, of course, begs the questions: boxes of what?  boxes from whom?  was

it a review of the contents of the boxes, or just the outside? For this important service that was not worthy of description, the estate was billed $700. The Firm, and primarily Ms. Limor, proceeded with this lackadaisical approach through 28 different time entries amounting to $7,756.00 in requested and unsubstantiated fees. These insufficiencies, coupled with the lack of recall by the witnesses at the hearing, combine to make it impossible for the Court to determine whether the fees were reasonable and for necessary services, not to mention if there was actual, or even any, benefit to the estate.

For these reasons, the fees associated with the time entries detailed in Exhibit F, totaling $7,756.00, are Denied.

### g. Seventh Avenue Partners Claim

The Court has agreed to reserve its ruling on the services itemized on Exhibit G. Those fees are associated with the estate's claim in the Seventh Avenue Partners bankruptcy. The itemization is for the convenience of the parties and to clarify those requests that have been excluded from this ruling and reserved for future consideration.

## CONCLUSION

The detailed analysis that the Court was forced to undertake with the review of this fee Application highlighted what appears to be a major problem within the Middle District of Tennessee. Despite having an experienced group of panel trustees, through the years, the practice of hiring their own firms to represent estates has become a routine rather than being an exception. With this ruling, the Court seeks to accomplish two goals: (1) to conduct its independent review of the Application and rule appropriately; and, (2) to remind the bar of the applicable standards and guide future applicants so as to improve the fee process, which the Court believes will have a beneficial effect on the bankruptcy systems as a whole.

Before addressing this Court's specific requirements for fee applications, the burden that the system places on the Chapter 7 trustees deserves acknowledgement. The overwhelming majority of Chapter 7 cases are no asset cases. At this time, the trustee receives a paltry $60 for complying with the onerous enumerated duties that they are mandated to complete in every case. The current compensation scheme fails to adequately recognize the significance of the Chapter 7 trustee's diligence to task in providing meaningful review of an exorbitant amount of information, even in a no asset Chapter 7 case.

Such acknowledgement does not in any way diminish the importance of the trustees' diligence, nor does it excuse failure to comply with the duties and responsibilities assigned to trustees for which they have voluntarily undertaken by acceptance of their position. After all, it is this Court's opinion that Chapter 7 trustees bear the heaviest burden of any stakeholder in the bankruptcy system. That burden comes from the duty that every panel trustee has to each and every estate for which they are appointed. This duty requires the trustee to use their best business judgment in the administration of a case or the decision to decline administration. This judgment includes decisions to hire professionals to perform services on behalf of the trustee. In instances where the trustee hires his or her own firm, the trustee must be able to articulate why it will benefit the estate to do so. In every instance where the trustee's firm has been hired by the trustee, the burden rests squarely with the trustee to justify the arrangement as thoroughly and specifically as possible. Let's not forget, the trustee is employing the firm at the expense of the estate and, more specifically, at the expense of the general unsecured creditors.

Therefore, to satisfy the business judgment standard when the trustee decides to hire their own firm, the following information is essential to justify the employment and provide a basis for the employment application:

1. a clear description of the benefit the employment of the firm will bring to the estate;
2. in the rare instance where services associated with trustee duties are to be undertaken by the firm, an articulation of the "unique" circumstances justifying the delegation of those duties and warranting compensation as legal services; and
3. an explanation as to the proposed billing method and why this method is the most cost effective available.

If the trustee satisfies the standard for employing his or her own firm as set forth above, the trustee then has an ongoing obligation throughout the life of the employment to ensure that good business judgment, which includes billing judgment, is exercised throughout the duration of the case through the proper management of the hired professionals. This can be accomplished by taking the following steps:

1. Filing periodic fee applications as provided for in the Code,
2. Updating asset reports on a regular basis,
3. Addressing issues timely and in such a way as to properly inform the Court and interested parties,

4. Comply with all Code and federal, as well as local, rule requirements in the submission of each and every fee application, and

5. Provide the Court with time records kept contemporaneously for trustee duties and attorney duties that are being charged to the estate under the trustee's fee application and the attorney's firm's application.

In essence, the Court is only requiring the panel trustees to do what is common practice in the legal field: justify their fees to their clients. Again, the trustee's duty is to the estate, and the "clients" in this context include the general unsecured creditors, who are the intended beneficiaries of the estate and the principal reason the estate is being administered. Had the instant Application been submitted to a client outside the bankruptcy context, one can only imagine what such a client would say about a bill encompassing four years, and the severe lack of information and explanation regarding the contents of that bill.

The Court will not, and cannot, dictate whether or when to employ methods other than hourly billing, or when it is appropriate for the trustee's firm to reduce its fees. But, the expectation here, and the current economics demand, that the trustees constantly reevaluate the terms of professional employment arrangements to ensure that the estate is actually benefitting from those arrangements.

Here, the distribution included an amount equaling over 50% of estate receipts for fees and costs of administration of the estate, with a miniscule 2.82% to general unsecured creditors. The optics of such a distribution scheme begs to question the business and billing judgment of the trustee. In this case, as in others that present similar circumstances, the Court intends to function as the "keeper of the temple of justice" and will ensure that all fee applications comply with the provisions as set forth herein. (quoting *King*, 546 B.R. at 685).

This Memorandum Opinion provides clear and direct guidance as to the expectations of the Court. Therefore, the United States Trustee for the Middle District of Tennessee is directed to distribute this Opinion to all of the panel trustees in this district.

An order consistent with this Memorandum Opinion will be simultaneously entered.

This Order has been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| Eric S. Peterson, | ) | Case No: 12-07575-CW3-7 |
| Peterson Insurance Agency, LLC, | ) | Substantively Consolidated |
| Peterson Enterprises, LLC, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |

**APPEARANCES**

Susan R. Limor
Limor & Johnson, Attorneys At Law
95 White Bridge Road
Suite 503
Nashville, TN 37205
Trustee

Phillip G. Young, Jr.
Thompson Burton PLLC
6100 Tower Circle, Suite 200
Franklin, Tennessee 37067
Attorneys for Susan R. Limor

Erica R. Johnson
Limor & Johnson, Attorneys At Law
95 White Bridge Road
Suite 503
Nashville, TN 37205
Attorney for Trustee

Joseph P. Rusnak
Tune Entrekin & White PC
315 Deaderick Street Ste 1700
Nashville, TN 37238-1700
Attorney for Creditors

Beth Roberts Derrick
Assistant US Trustee
Office of the US Trustee
701 Broadway, Suite 318
Nashville, TN 37203

THE HONORABLE CHARLES M. WALKER
UNITED STATES BANKRUPTCY JUDGE

**Attachment A – Deductions for Services Prior to Employment**

| | | | |
|---|---|---|---|
| 10/8/12* | Meeting w/Joe Rusnak<br>Attorney for Petitioning Creditors, re: cases | .5<br>150/hr | 75.00 |
| 10/9/12* | Draft and file Application to Employ Firm;<br>review mailing matrix to ensure service<br>on proper parties | .5<br>150/hr | 75.00 |
| | Telephone call w/M. Lousen, Attorney for<br>Avenue Bank, re Motion for Relief | .2<br>150/hr | 30.00 |
| | Draft and file Application to Employ Firm;<br>review mailing matrix to ensure service<br>on proper parties | .5<br>150/hr | 75.00 |
| | Draft and file Application to Employ Firm;<br>review mailing matrix to ensure service<br>on proper parties | .5<br>150/hr | 75.00 |
| * | Prepare and file Objection to Avenue Bank's<br>Motion for Relief from Stay | .3<br>150/hr | 45.00 |
| 10/10/12* | Telephone call w/P. Griffin, Attorney for Wells<br>Fargo, re security interest and financials | .3<br>150/hr | 45.00 |
| 10/15/12* | Email to P. Griffin, Attorney for Wells Fargo,<br>re Subpoena | .1<br>150/hr | 15.00 |
| * | Email to M. Loosen, Attorney for Avenue Bank<br>re Subpoena | .1<br>150/hr | 15.00 |
| 10/18/12* | Telephone call with M. Lousen, Attorney for<br>Avenue Bank, re MFR and Equity in RE | .2<br>150/hr | 30.00 |
| 10/24/12* | Emails to and from M. Loosen, Attorney for<br>Avenue Bank, re upcoming hearing on MFR | .2<br>150/hr | 30.00 |
| 10/25/12* | Prepare and serve subpoenas to 5 separate banks | 1.0<br>150/hr | 150.00 |
| | Prepare and serve subpoenas to 5 separate banks | 1.0<br>150/hr | 150.00 |
| | Prepare and serve subpoenas to 5 separate banks | 1.0<br>150/hr | 150.00 |
| | Review and execute letters to banks and subpoenas | .3<br>350/hr | 105.00 |

| 10/31/12* | Review PACER for any objections; prepare and Submit Order Approving Employment of Attorney | .1 150/hr | 15.00 |
| | Review PACER for any objections; prepare and Submit Order Approving Employment of Attorney | .1 150/hr | 15.00 |
| | Review PACER for any objections; prepare and Submit Order Approving Employment of Attorney | .1 150/hr | 15.00 |

\*      These services are also non-compensable as attorney services

**Fee Deduction:**      **$1,110.00**

<u>Associated Expenses</u>

| | | | Qty/Price | Amount |
|---|---|---|---|---|
| 10/9/2012 | ERJ | Copying cost | 35 | 7.70 |
| | | Application to Employ Firm | 0.22 | |
| | ERJ | Postage | 7 | 3.15 |
| | | Application to Employ Firm | 0.45 | |
| | ERJ | Envelope | 7 | 1.05 |
| | | Application to Employ Firm | 0.15 | |
| | ERJ | Copying cost | 20 | 4.40 |
| | | Application to Employ Firm | 0.22 | |
| | ERJ | Postage | 4 | 1.80 |
| | | Application to Employ Firm | 0.45 | |
| | ERJ | Envelope | 4 | 0.60 |
| | | Application to Employ Firm | 0.15 | |
| | ERJ | Copying cost | 45 | 9.90 |
| | | Application to Employ Firm | 0.22 | |
| | ERJ | Envelope | 9 | 1.35 |
| | | Application to Employ Firm | 0.15 | |
| | ERJ | Postage | 9 | 4.05 |
| | | Application to Employ Firm | 0.45 | |
| 10/25/2012 | ERJ | Copying cost | 20 | 4.40 |
| | | Subpoenas to 5 separate banks (4pgs/bank) | 0.22 | |
| | ERJ | Postage | 1 | 10.25 |
| | | Subpoenas to 5 separate banks (certified mail w/return receipt requested) (1/3 portion of total cost shared with companion cases – $6.15/subpoena) | 10.25 | |
| | ERJ | Postage | 1 | 10.25 |
| | | Subpoenas to 5 separate banks (certified mail w/return receipt requested) (1/3 portion of total cost shared with companion cases – $6.15/subpoena) | 10.25 | |

| 10/25/2012 | ERJ | Postage | 1 | 10.25 |
| | | Subpoenas to 5 separate banks (certified mail w/return receipt requested) (1/3 portion of total cost shared with companion cases – $6.15/subpoena) | 10.25 | |
| | ERJ | Copying cost | 20 | 4.40 |
| | | Subpoenas to 5 separate banks (4pgs/bank) | 0.22 | |
| | ERJ | Copying cost | 20 | 4.40 |
| | | Subpoenas to 5 separate banks (4pgs/bank) | 0.22 | |

**Expense Deduction:** **$77.95**

**Total Deduction:** **$1,187.95**

3

**Attachment B – Services Improperly Charged to Estate**

| | | | |
|---|---|---|---|
| 11/12/12 | Prepare AO re MFR filed by Avenue Bank | .5<br>150/hr | 75.00 |
| 11/14/12 | Prepare and submit Order Continuing Hearing<br>On Motion for Relief from Stay | .2<br>150/hr | 30.00 |
| 11/27/12 | Attend hearing on MFR filed by Avenue Bank;<br>announce continuance | .5<br>150/hr | 75.00 |
| 11/28/12 | Prepare and submit Order Continuing Hearing on<br>Motion for Relief from Stay | .2<br>150/hr | 30.00 |
| 12/6/12 | Review documents from Avenue Bank; prepare<br>and file Notice of Withdrawal of Objection to<br>Motion for Relief | .4<br>150/hr | 60.00 |
| 12/6/12 | Review proposed AO re relief from stay provided by<br>M. Loosen, Attorney for Avenue Bank; Email to M.<br>Loosen with permission to include Trustee's signature | .1<br>150/hr | 15.00 |

**Total Request and Deduction:**                                    **$285.00**

1

**Attachment C – Trustee Services Billed as Attorney Services**

<u>Attorney Fees</u>

| | | | |
|---|---|---|---|
| 11/12/12 | Telephone call with M. Loosen, Attorney for Avenue Bank, re upcoming hearing on MFR; Follow-up emails to and from M. Loosen re the same | .3 150/hr | 45.00 |
| 11/26/12 | Emails to and from M. Loosen, Attorney for Avenue Bank re upcoming hearing on MFR and continuance | .2 150/hr | 30.00 |
| 11/28/12* | Letter to Travelers regarding commercial policies; letter to The Hartford regarding history on commissions; review issues regarding 7th Avenue Properties; telephone conference with M. Rusnak re including | 1.8 350/hr | 630.00 |
| 12/3/12* | Attend hearing on involuntary bankruptcy against Seventh Avenue Partnership; review and revise letter To Hartford | 2.5 350/hr | 875.00 |
| 12/4/12 | Telephone call with M. Loosen, Attorney for Avenue Bank, re Subpoena and payoff | .2 150/hr | 30.00 |
| 12/4/12 * | Review mail regarding subpoena from Wells Fargo; review debtor documents | .7 150/hr | 245.00 |
| 12/5/12 | Preliminary review of docs from Wells Fargo in Response to Subpoena | 1.0 150/hr | 150.00 |
| 12/13/12 | Review case file; prepare and file Motion to Extend Discharge Objection Deadline | .5 150/hr | 175.00 |
| 12/13/12 | Review MFR filed by Wells Fargo; Emails to and from V. Ferraro, Attorney for Wells Fargo, re possible objection due to issue of equity | .2 150/hr | 30.00 |
| 12/21/12 | Prepare and file Objection to Closure of Case | .3 350/hr | 105.00 |
| 1/2/13 | Review proposed AO re relief rom stay provided by V. Ferraro, Attorney for Wells Fargo; Email to V. Ferraro with permission to include Trustee's signature | .1 210/hr | 21.00 |

1

| Date | Description | Hours | Amount |
|---|---|---|---|
| 1/4/13 | Telephone conference with Mr. Rusnak regarding documents from Wells Fargo | .1 350/hr | 35.00 |
| 1/4/13 | Review PACER for any objections; submit Order extending discharge objection deadline | .1 210/hr | 21.00 |
| 1/7/13* | Receipt and review of Amended Motion for Relief from Stay; compare to assets | .2 210/hr | 42.00 |
| 1/7/13* | Receipt and review of Motion for Relief from Stay; review petition regarding legal matters | .1 210/hr | 21.00 |
| 4/23/13 | Prepare and file motion to extend discharge objection deadline | .2 350/hr | 70.00 |
| 5/9/13 | Review of letter (w/exhibits) from Prudential re insurance commissions | .5 210/hr | 105.00 |
| 5/10/13 | Email to prudential re commissions that belong to bk estate | .2 210/hr | 42.00 |
| 5/13/13 | Review and revise letter to Cadence Bank and subpoenas to miscellaneous banks | .2 350/hr | 70.00 |
| 5/15/13 | Review PACER for objections; submit order extending discharge objection deadline | .1 350/hr | 35.00 |
| 6/11/13 | Receipt and review of Regions documents | .2 350/hr | 70.00 |
| 7/11/13 | Phone call with K. Classen from Prudential re hold on commissions | .1 210/hr | 21.00 |
| 7/12/13 | Phone call with K. Classen from Prudential re hold on commissions; Email to K. Classen re same | .4 210/hr | 84.00 |
| 7/25/13** | Prepare, file and serve Motion to Compel | .5 210/hr | 105.00 |
| ** | Review and revise motion to compel | .2 350/hr | 70.00 |
| | Prepare and file motion to extend discharge objection deadline | .2 210/hr | 42.00 |

| | | | |
|---|---|---|---|
| | Email to K. Classen w/Prudential re need to file AP and request for additional information re the same | .2<br>210/hr | 42.00 |
| ** | Review debtor's response to motion to compel | .2<br>350/hr | 70.00 |
| 8/16/13 | Review PACER for objections; submit order extending discharge objection deadline | .1<br>210/hr | 21.00 |
| 8/30/13** | Telephone conversation with M. Pickrell, Debtor's attorney, re Motion to compel and upcoming hearing on response to motion; Follow-up email to M. Pickrell re the same | .3<br>210/hr | 63.00 |
| 9/3/13** | Attend hearing on motion to compel and make announcement | .5<br>210/hr | 105.00 |
| 9/4/13** | Prepare and submit order continuing hearing on motion to compel | .2<br>210/hr | 42.00 |
| 9/19/13** | Prepare and file Withdrawal of Motion to Compel | .2<br>350/hr | 70.00 |
| 9/24/13** | Court appearance regarding withdrawal of motion to compel | .2<br>350/hr | 70.00 |
| 7/2/14 | Initial review of statements from Wells Fargo re account 9445 (12-7577) | 1.0<br>280/hr | 280.00 |
| 7/9/14 | Review deposits for Wells Fargo 6183 & Wells Fargo 9445 accounts; update spreadsheet (12-7577) | 1.0<br>280/hr | 280.00 |
| 7/17/14 | Prepare Application to Employ Accountant; Email to Accountant re the same (12-7577) | .2<br>280/hr | 56.00 |
| 7/17/14 | Prepare Application to Employ Accountant; Email to Accountant re the same (12-7576) | .2<br>280/hr | 56.00 |
| 7/17/14 | Meeting with Mr. Lewis regarding case regarding Ponzi strategy; review creditor claims | 1.0<br>350/hr | 350.00 |
| 7/21/14 | Finalize, file, and serve Application to Employ Accountant (12-7577) | .4<br>280/hr | 112.00 |
| 7/21/14 | Finalize and file Application to Employ Accountant; | .3 | 84.00 |

3

| | | | |
|---|---|---|---|
| | review and revise mailing matrix to ensure proper service of same (12-7576) | 280/hr | |
| 7/21/14 | Finalize, file and serve Application to Employ Accountant (12-7575) | .4 280/hr | 112.00 |
| 8/12/14 | Review PACER for any objections; submit order approving employment of accountant (12-7575) | .2 280/hr | 56.00 |
| 8/12/14 | Review PACER for any objections; submit order approving employment of accountant (12-7576) | .2 280/hr | 56.00 |
| 8/12/14 | Review PACER for any objections; submit order approving employment of accountant (12-7577) | .2 280/hr | 56.00 |
| 10/2/14 | Draft Application to Employ Special Counsel; Email to Special Counsel re same (12-7575) | .6 280/hr | 168.00 |
| 10/3/14 | Prepare and file Application to Employ Special Counsel; review and revise mailing matrix to ensure proper service of same (12-7576) | .5 280/hr | 140.00 |
| 10/3/14 | Prepare, file and serve Application to Employ Special Counsel (12-7677) | .5 280/hr | 140.00 |
| 10/3/14 | Finalize, file and serve Application to Employ Special Counsel (12-7575) | .2 280/hr | 56.00 |
| 10/8/14 | Emails from and to J. Rusnak re pending Application for administrative expenses for involuntary creditors (12-7577) | .2 280/hr | 56.00 |
| 10/29/14 | Emails to and from J. Rusnak re fee application for involuntary creditors; Review applications; Memo to file re findings (General/Consolidated Cases) | .5 280/hr | 140.00 |
| 10/30/14 | Review PACER for any objections; submit order authorizing employment of special counsel (12-7575) | .2 280/hr | 56.00 |
| 10/30/14 | Review PACER for any objections; submit order authorizing employment of special counsel (12-7576) | .1 280/hr | 28.00 |
| 10/30/14 | Review PACER for any objections; submit order authorizing employment of special counsel (12-7577) | .2 280/hr | 56.00 |
| 11/7/14 | Review of email from J. Rusnak re fee application | .5 | 140.00 |

4

| | | | |
|---|---|---|---|
| | for involuntary creditors; Emails to and from J. Rusnak re resolution offers (General/Consolidated Cases) | 280/hr | |
| 12/12/14 | Receipt and review of Motion to Set Hearing on Application for Administrative Expenses or Petitioning Creditor Emails from and to J. Rusnak re AO allowing (sic) administrative claims in both cases (12-7575 & 12-7577) | .3 280/hr | 84.00 |
| 12/15/14 | Receipt and review of Order Setting Hearing on Motion for Administrative Expense or Petitioning Creditor; calendar same (12-7575) | .1 280/hr | 28.00 |
| 1/8/15 | Telephone call with J. Rusnak re administrative claim application; Emails to and from J. Rusnak re the same; Proposed Agreed Order resolving (RE EP; 12-7575 -& PE LLC; 12-7577) | .8 280/hr | 224.00 |
| 1/8/15 | Review Application to pay admin expenses; Prepare and file Response to the same (12-7576) | .2 280/hr | 56.00 |
| 1/9/15 | Review proposed terms for AO re Rusnak admin claim; Email to J. Rusnak re comments; Update AO re the same | .3 280/hr | 84.00 |
| 2/4/15 | Prepare AO re J. Rusnak fee application; Email to J. Rusnak re the same (12-7576) | .2 280/hr | 56.00 |
| 2/5/15 | Emails from and to J. Rusnak re proposed AO re admin expense claim and expenses for services provided post order of relief (12-7576) | .2 280/hr | 84.00 |
| 2/20/15 | Emails to and from J. Rusnak re Trustee's proposed settlement terms for administrative expense claim (12-7576) | .2 280/hr | 84.00 |
| 7/2/15 | Receipt and review of Motion and proposed order for Special Counsel to Withdraw as Attorney (General/Consolidated Cases) | .1 | 28.00 |
| 9/11/15* | Prepare Application to employ Armstrong Law; email to D. Armstrong to review; finalize and file same; review mailing matrix for proper service of same | .8 280/hr | 224.00 |
| 9/21/15 | Review email from J. Rusnak re attempting to assemble coalition to object to application to employ special counsel | .1 280/hr | 28.00 |

5

| | | | |
|---|---|---|---|
| 10/1/15 | Emails from and to J. Rusnak re objection to employment of special counsel (General/Consolidated Cases) | .2 280/hr | 56.00 |
| 10/2/15 | Receipt and review of Creditors' Objection to Motion to Employ Armstrong Law Firm and multiple exhibits to same (General/Consolidated Cases) | .4 280/hr | 112.00 |
| 10/8/15 | Receipt and review of Joinder to Creditor's Objection to Application to Emploly Armstrong Law Firm (General/Consolidated Cases) | .2 280/hr | 56.00 |
| 1/11/16 | Prepare First and Final Fee Application for Armstrong Law Firm; Email to D. Armstrong to review. (General/Consolidated Cases) | 1.2 280/hr | 336.00 |
| 1/14/16 | Prepare Application re Mediator employment/fees; Email to Mediator re conflict check; Email to client to review. (General/Consolidated Cases) | 1.0 280/hr | 280.00 |
| 1/15/16* | Emails to and from W. Hughes, Mediator, re statement of disinterestedness and possible conflicts; Update Statement of Disinterestedness and forward to Mr. Hughes to review and sign. (General/Consolidated Cases) | .1 280/hr | 28.00 |
| 1/15/16* | Update, finalize, and file Application for Compensation for Armstrong Law Firm; review and revise mailing matrix for proper service of same. (General/Consolidated Cases) | .5 280/hr | 140.00 |
| 2/1/16* | Review revisions to Application provided by W. Hughes, Mediator; update Application to reflect Mr. Hughes' revisions and update case status information; update, finalize, and file Application to Employ Mediator Nunc Pro Tunc and to Allow Compensation of same; review and revise mailing matrix to ensure proper service of same. (General/Consolidated Cases) | .6 280/hr | 168.00 |
| 2/8/16 | Review PACER bankruptcy docket for any objections for fee application for Armstrong Law Firm; submit order approving same (General/Consolidated Cases) | .1 280/hr | 28.00 |
| 2/23/16 | Review docket for objections to Motion to employ and compensate Mediator; submit Order approving same. (General/Consolidted Cases) | .1 280/hr | 28.00 |

6

| | | | | |
|---|---|---|---|---|
| 11/10/16 | Prepare Application for Accountant; Email to client to review (General/Consolidated Cases) | | .5 280/hr | 140.00 |
| 11/22/16 | Update,finalize, file and serve First and Final Application for Compensation for Accountant (General/Consolidated Cases) | | .5 280/hr | 140.00 |

\* These entries are also defective and permit disallowance because they are insufficient and/or vague, and/or permit reduction because services are lumped together.

\*\*These entries are insufficient in that they do not indicate if the motion was filed in an adversary or in the main case, and against whom relief was sought.  Additionally, Ms. Limor could provide no information regarding the motion when questioned at the hearing.

**Total Fee Deduction:**                                    **$8,622.00**

<u>Associated Expenses</u>

| | | | Qty/Price | Amount |
|---|---|---|---|---|
| 7/21/2014 | ERJ | Copying cost Application to Employ Accountant | 30 0.22 | 6.60 |
| | ERJ | Postage Application to Employ Accountant | 6 0.48 | 2.88 |
| | ERJ | Envelope Application to Employ Accountant | 6 0.15 | .90 |
| | ERJ | Copying cost Application to Employ Accountant | 10 0.22 | 2.20 |
| | ERJ | Postage Application to Employ Accountant | 2 0.48 | 0.96 |
| | ERJ | Envelope Application to Employ Accountant | 2 0.15 | 0.30 |
| | ERJ | Copying cost Application to Employ Accountant | 45 0.22 | 9.90 |
| | ERJ | Postage Application to Employ Accountant | 9 0.48 | 4.32 |
| | ERJ | Envelope Application to Employ Accountant | 9 0.15 | 1.35 |
| 10/3/2014 | ERJ | Copying cost Application to Employ Special Counsel | 30 0.22 | 6.60 |
| | ERJ | Postage Application to Employ Special Counsel | 5 0.48 | 2.40 |
| | ERJ | Envelope Application to Employ Special Counsel | 5 0.15 | .75 |

7

| | | | | |
|---|---|---|---|---|
| | ERJ | Copying cost | 12 | 2.64 |
| | | Application to Employ Special Counsel | 0.22 | |
| | ERJ | Postage | 2 | 0.96 |
| | | Application to Employ Special Counsel | 0.48 | |
| | ERJ | Envelope | 2 | 0.30 |
| | | Application to Employ Special Counsel | 0.15 | |
| | ERJ | Copying cost | 48 | 10.56 |
| | | Application to Employ Special Counsel | 0.22 | |
| | ERJ | Postage | 8 | 3.84 |
| | | Application to Employ Special Counsel | 0.48 | |
| | ERJ | Envelope | 8 | 1.20 |
| | | Application to Employ Special Counsel | 0.15 | |
| 1/15/2016 | ERJ | Copying cost | 280 | 61.60 |
| | | Application for Compensation for Armstrong Law Firm (14 parties x 20 pgs) | 0.22 | |
| | ERJ | Envelope | 14 | 2.10 |
| | | Application for Compensation for Armstrong Law Firm | 0.15 | |
| | ERJ | Envelope | 14 | 9.87 |
| | | Application for Compensation for Armstrong Law Firm | 0.71 | |
| 2/1/2016 | ERJ | Copying cost | 168 | 36.96 |
| | | Mediator Application (14 parties x 12 pgs) | 0.22 | |
| | ERJ | Envelope | 14 | 2.10 |
| | | Mediator Application | 0.15 | |
| | ERJ | Postage | 14 | 9.87 |
| | | Mediator Application | 0.71 | |
| 11/22/2016 | ERJ | Copying cost | 280 | 61.60 |
| | | Application for Accountant (14 parties x 20 pgs) | 0.22 | |
| | ERJ | Copying cost | 224 | 49.28 |
| | | First and Final Application for Compensation For Attorneys (14 parties x 16 pages) | 0.22 | |
| | ERJ | Envelope | 14 | 2.10 |
| | | Applications x 2 | 0.15 | |
| | ERJ | Postage | 14 | 12.39 |
| | | Applications x 2 | 0.89 | |

**Total Expense Deduction:**                                     $   306.53

**Total Fee and Expense Deduction:**                    $8,928.53

8

**Attachment D – Improper Allocation of Professional Resources**

| | | | |
|---|---|---|---|
| 9/19/13 | Prepare and file Certificate of Service; Serve Summons, Complaint and Certificate of Service (Hartford Litigation) | .5 210/hr | 105.00 |
| 10/24/13 | Prepare and file Certificate of Service for Summons and Complaint; Serve Summons, Complaint and Certificate of Service | .5 210/hr | 105.00 |
| 8/19/14 | Prepare and file CTSV for Summons and Complaint; Serve Summons, Complaint & CTSV (14-90339) (12-7576) | .5 280.hr | 140.00 |
| 8/19/14 | Prepare and file CTSV for Summons and Complaint; Serve Summons, Complaint & CTSV (14-90340) (12-7577) | .5 280.hr | 140.00 |
| 8/20/14 | Prepare and file CTSV for Summons and Complaint; Serve Summons, Complaint & CTSV (14-90342) (12-7576) | .6 280.hr | 168.00 |
| 8/20/14 | Prepare and file CTSV for Summons and Complaint; Serve Summons, Complaint & CTSV (14-90343) (12-7576) | .3 280.hr | 84.00 |
| 8/20/14 | Prepare and file CTSV for Summons and Complaint; Serve Summons, Complaint & CTSV (14-90344) (12-7577) | .7 280.hr | 196.00 |
| 8/20/14 | Prepare and file CTSV for Summons and Complaint; Serve Summons, Complaint & CTSV (14-90345) (12-7577) | .8 280.hr | 224.00 |
| 8/20/14 | Prepare and file CTSV for Summons and Complaint; Serve Summons, Complaint & CTSV (14-90346) (12-7577) | .4 280.hr | 112.00 |
| 8/20/14 | Prepare and file CTSV for Summons and Complaint; Serve Summons, Complaint & CTSV (14-90347) (12-7577) | .4 280.hr | 112.00 |
| 8/20/14 | Prepare and file CTSV for Summons and Complaint; Serve Summons, Complaint & CTSV (14-90348) (12-7577) | 1.0 280.hr | 280.00 |

| 8/21/14 | Prepare and file CTSV for Summons and Complaint; Serve Summons, Complaint & CTSV (14-90350) (12-7575) | 1.0 280.hr | 280.00 |
|---------|---|---|---|
| 8/21/14 | Prepare and file CTSV for Summons and Complaint; Serve Summons, Complaint & CTSV (14-90351) (12-7575) | .4 280.hr | 112.00 |
| 10/1/14 | Prepare and file CTSV for Reissued Summons (re Defendant Gray); Serve reissued Summons, Complaint & CTSV (RE: 14-ap-90348) (12-7577) | .3 280/hr | 84.00 |

**Total Fee Request:**                                                    **$ 2,142.00**

**Total Hours: 7.9 Allowed at $135/hr. Paraprofessional Rate:**          **$ 1,066.50**

**Total Fee Deduction:**                                                  **$ 1,075.50**

## Attachment E – Hartford/Prudential Litigation

| Date | Description | Time/Rate | Amount |
|------|-------------|-----------|--------|
| 11/7/13 | Telephone call with attorney for Prudential re adversary (Hartford Litigation) | .2 210/hr | 42.00 |
| 11/8/13 | Emails to and from E. Whiting, Attorney for Prudential, re possible settlement and need for default v. Debtor | .2 210/hr | 42.00 |
| 11/11/13 | Prepare Motion for Default against Debtor (Hartford Litigation); Email to Attorney for Hartford re the same | .5 210/hr | 105.00 |
| | Prepare, file and serve Motion and Order to continue pretrial conference (Hartford Litigation) | .4 210/hr | 84.00 |
| 1/6/14 | Review Docket; Prepare, file and serve Motion for Default Against Debtor (Hartford Litigation) | 1.0 280/hr | 280.00 |
| 1/24/14 | Review proposed stipulations provided by attorney for Hartford | .2 350/hr | 70.00 |
| 1/28/14 | Prepare, file and serve Motion and Order to continue pretrial conference (Hartford Litigation) | .3 280/hr | 84.00 |
| | Review PACER for any objections; finalize and submit Order granting default judgment against Eric Peterson (Hartford Litigation) | .1 280/hr | 28.00 |
| 3/20/14 | Review of proposed stipulation by Prudential Attorney; Emails to and from E. Whiting, Attorney for Defendant, re issues. | .3 280/hr | 84.00 |
| 3/25/14 | Meeting with Trustee regarding proposed settlement language; Email to attorney for Hartford/Prudential re the same (Hartford Litigation) | .3 280/hr | 84.00 |
| 3/26/14 | Court appearance at pretrial; prepare and file motion and order to continue pretrial conference (Hartford Litigation) | .5 350/hr | 175.00 |
| 4/15/14 | Email to E. Whiting, attorney for Prudential, re status on settlement agreement and upcoming PTC | .1 280/hr | 28.00 |
| 5/21/14 | Email to E. Whiting, attorney for Prudential, re status on settlement agreement and upcoming PTC | .1 280/hr | 28.00 |

1

| 5/28/14 | Attend Pretrial Conference; Emails to and from attorney for Prudential re status of pretrial conference and proposed stipulation (Hartford Litigation) | 1.0 280/hr | 280.00 |
|---------|------|------|------|
| 6/23/14 | Prepare Motion to approve comp and settle with Prudential; Emails to and from E. Whiting re the same (Hartford Litigation) | 1.0 280/hr | 280.00 |
| 6/27/14 | Finalize, file and serve Motion to Approve Comp and Settle with Prudential/Hartford (Hartford Litigation) | .6 280/hr | 168.00 |
| 7/21/14 | Review PACER for any objections; finalize and submit Order Approving Compromise (Hartford Litigation) | .1 280/hr | 28.00 |
| 7/28/14 | Emails from and to E, Whiting, Attorney for Prudential, re policies subject to the settlement (12-7575) | .2 280/hr | 56.00 |

**Total Fee Deduction:**                  **$    0.00**

**Total Fee Award:**                     **$2,142.56**

## Attachment F - Insufficient Description

| Date | Description | Hours / Rate | Amount |
|---|---|---|---|
| 1/3/14 | Review and revise motion and order for default; telephone call to U.S. Attorney regarding office regarding documents | .2 350/hr | 70.00 |
| 1/6/14 | Review PACER for any objections; finalize and submit Order for Default Judgment | .1 280/hr | 28.00 |
| 1/29/14 | Court appearance at pretrial conference | .3 350/hr | 105.00 |
| 5/29/14 | Review documents for transfers and financial information | 6.0 350/hr | 2,100.00 |
| 5/30/14 | Review files and email re: transfers | 4.0 350/hr | 1,400.00 |
| 6/2/14 | Finish reviewing boxes | 2.0 350/hr | 700.00 |
| 6/27/14 | Review PACER for any objections; submit Order Approving Compromise and Settlement | .2 280/hr | 56.00 |
| 7/8/14 | Telephone conference with Mr. Stephenson regarding investor files (12-7575) | .3 350/hr | 105.00 |
| 7/15/14 | Review and execute subpoenas (12-7575) | .2 350/hr | 70.00 |
| 8/12/14 | Review and revise complaint (12-7576) | .2 350/hr | 70.00 |
| 8/12/14 | Review and revise complaint (12-7577) | .2 350/hr | 70.00 |
| 8/12/14 | Review, research, and revise factual background of complaint (General/Consolidated Cases) | .8 350/hr | 280.00 |
| 9/10/14 | Review and revise settlement (12-7577) | .3 350/hr | 105.00 |
| 10/2/14 | Review and revise agreed order (12-7577) | .1 350/hr | 35.00 |
| 10/21/14 | Review of letters from J. Rusnak re defenses; | 2.0 | 560.00 |

1

| | | | |
|---|---|---|---|
| | Review files and draft responses re needed docs General/Consolidated Cases | 280/hr | |
| 12/21/14 | Review settlement correspondence and pleadings | .2 350/hr | 70.00 |
| 9/23/15 | Update proposed discovery requests (General/Consolidated Cases) | .3 280/hr | 84.00 |
| 10/1/15 | Emails from and to J. Rusnak re discovery requests (General/Consolidated Cases) | .1 280/hr | 28.00 |
| 10/5/15 | Prepare documents for discovery; Emails to and from Defendants' attorney re same (General/Consolidated Cases) | 2.0 280/hr | 560.00 |
| 10/26/15 | Emails from and to J. Rusnak, attorney for remaining defendants, re discovery extension (General/Consolidated Cases) | .1 280/hr | 28.00 |
| 12/9/15 | Prepare expedited motion/order to amend pretrial order; emails to and from Special Counsel regarding the same; Update and file the same with the Court. (General/Consolidated Cases) | 1.5 280/hr | 420.00 |
| 12/11/15 | Emails to J. Rusnak, Attorney for remaining defendants, with Trustee's responses to discovery (General/Consolidated Cases) | .3 280/hr | 84.00 |
| 12/12/15 | Emails from and to J. Rusnak re discovery responses (General/Consolidated Cases) | .2 280/hr | 56.00 |
| 12/14/15 | Preparation for upcoming expedited hearing to amend pretrial orders (General/Consolidated Cases) | .5 280/hr | 140.00 |
| 12/15/15 | Attend hearing on expedited hearing to amend pretrial orders (General/Consolidated Cases) | 1.0 280/hr | 280.00 |
| 1/11/16 | Email to J. Rusnak re status of proposed 9019 Motion v. Remaining Defendants (General/Consolidated Cases) | .1 280/hr | 28.00 |
| 1/13/16 | Review email from J. Rusnak re revisions to 1st draft of 9019 Motion; Revise 9019 Motion; Email second draft to J. Rusnak to review. (General/Consolidated Cases) | .2 280/hr | 56.00 |

| 1/14/16 | Emails from and to J. Rusnak regarding revisions to second draft of 9019 Motion; update and file (in both main case & AP) 9019 Motion v. remaining defendants; review and revise mailing matrix for proper service of same. (General/Consolidated Casees) | .6 280/hr | 168.00 |

**Total Fee Deduction:**                                              **$7,756.00**

## Attachment G – Seventh Avenue Partners Claim

| 9/3/14 | Review Claims filed in Seventh Avenue; Prepare Notice of Appearance; Prepare Seventh Avenue Claims; Telephone call with L. Edmondson, Trustee re Seventh Avenue re the same (needs to be divided among the three cases) General/Consolidated Cases | 2.0 280/hr | 560.00 |
|--------|---|---|---|
| 9/4/14 | Review bank records re transfers & credits between PE LLC and SAP; Update and file Claim in SAP (12-7577) | 2.0 280/hr | 560.00 |
| 9/4/14 | Review bank records re transfers & credits between Mr. Peterson and SAP; Memo to file re "net loser" and reasons for not filing claim in SAP (12-7575) | 1.5 280/hr | 420.00 |
| 9/4/14 | Review bank records re transfers & credits between PIA LLC and SAP; Memo to file re "net loser" and reasons for not filing claim in SAP (12-7576) | .5 280/hr | 140.00 |
| 3/6/15 | Emails from and to J. Campbell, Attorney for Trustee for SAP, re Limor's claim in SAP (12-7577) | .2 280/hr | 56.00 |
| 3/9/15 | Review notes on claim filed in SAP; Emails from and to J. Campbell, Attorney for Trustee for SAP, re findings and no need to amend claim (12-7577) | .2 280/hr | 56.00 |